# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GAYLE SCHOR, KRISTINE MULCAHY ANGELA SHUE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD DALEY, Mayor, OFFICER RAMON SOLIDUM, UNKNOWN OFFICERS, and the CITY OF CHICAGO<br><br>Defendants. | Case No. 07 C 7119<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

Gayle Schor ("Schor"), Kristine Mulcahy ("Mulcahy"), and Angela Shue ("Shue"), on behalf of themselves and a purported class of motor vehicle operators within the City of Chicago (the "City") who were ticketed for using a wireless telephone without a "hands-free" device (collectively, "Plaintiffs"), filed this suit against Mayor Richard Daley ("Mayor Daley"), Officer Ramon Solidum ("Solidum"), Unknown Officers ("Officers"), and the City of Chicago (the "City") (collectively, "Defendants"). Plaintiffs were ticketed pursuant to Chicago municipal ordinance 9-40-260 ("Ordinance"), which Plaintiffs claim violates state and federal law. (R. 15, Am. Compl.)

## RELEVANT FACTS

The Chicago City Council passed the Ordinance on May 11, 2005, and it took effect on July 8, 2005. (R. 15, Am. Compl. ¶¶ 9-10.) The Ordinance prohibits the use of a mobile telephone without the use of a "hands free" device while operating a motor vehicle. (*Id.* ¶ 12.)

As of September 2007, over 25,000 citations were issued for violations of the Ordinance,

resulting in almost $2 million of City revenue. (*Id.* ¶ 27.) Officer Solidum issued over 750 citations, representing more than three percent of the total citations issued. (*Id.* ¶ 28.)

Between March 2006 and November 2007, Schor, Mulcahy, and Shue were independently operating motor vehicles in the City while using mobile telephones without "hands free" devices, when they were stopped and ticketed for violations of the Ordinance. (*Id.* ¶¶ 44-46, 50-52, 56-58.) Upon appearing in Court, Schor's and Shue's traffic tickets were dismissed. (*Id.* ¶¶ 48, 60.) Mulcahy paid the $75 fine attributable to the traffic citation. (*Id.* ¶ 54.)

In the Amended Complaint ("Complaint"), Plaintiffs allege: (1) a Section 1983 claim for false arrest; (2) false arrest under Illinois law; (3) malicious prosecution under Illinois law; (4) a Section 1983 claim against Mayer Daley for allowing the City to maintain a widespread policy of permitting police officers to "falsely arrest" citizens under the Ordinance; (5) a "*Monell*" claim; (6) a claim for compensation from the City for any judgment obtained against the Defendant Officers and/or Mayor Daley; (7) a claim against the City based on *respondeat superior*; (8) a Section 1983 claim for violation of the Equal Protection clause; and (9) a claim for declaratory and injunctive relief.

Currently before the Court is Defendants' joint motion to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (R. 17, Mot. To Dismiss.) For the following reasons, the motion is granted.

## LEGAL STANDARD

In a ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts in the complaint as true, and draws all reasonable inferences from those facts in the

plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008). To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this standard, the allegations in the complaint must (1) describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests;" and (2) "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1964-65 (2007)).

## ANALYSIS

### I. False Arrest

In Counts I and II of the Complaint, Plaintiffs allege that they were falsely arrested pursuant to 42 U.S.C. § 1983 and Illinois state law because the Defendant police officers ticketed them without probable cause to believe that they had violated any law. (R. 15, Am. Compl. ¶¶ 66, 69.) Defendants argue that Plaintiffs fail to state a claim for false arrest because: (1) Plaintiffs cannot show that they were, in fact, arrested; and (2) Plaintiffs cannot show that the police officers lacked probable cause to stop them and issue traffic citations. (R. 18, Mem. in Supp. of Mot. to Dismiss at 3-4.)

#### A. False Arrest under 42 U.S.C. § 1983

In general, a routine traffic stop does not constitute an arrest. *See United States v. Burns*, 37 F.3d 276, 280 (7th Cir. 1994). Plaintiffs do not claim that the traffic tickets doled out constituted anything more than a routine traffic stop, and accordingly, Plaintiffs' "false arrest" claims should fail.

3

Reading the Complaint as a whole, however, Plaintiffs appear to be trying to state a more general claim, that the traffic stops at issue violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures. "The law is settled that in Fourth Amendment terms a traffic stop entails a seizure of the driver even though the purpose of the stop is limited and the resulting detention quite brief." *Brendlin v. California*, – U.S. –, 127 S.Ct. 2400, 2406 (U.S. 2007) (internal citations omitted). Nevertheless, a plaintiff cannot state a claim for violation of the Fourth Amendment where the officer had probable cause for the traffic stop. "A police officer has probable cause for a traffic stop when he has an objectively reasonable basis to believe a traffic law has been violated. Moreover, probable cause exists when the circumstances confronting an officer support the reasonable belief that a driver has committed even a minor traffic offense." *United States v. Hernandez-Rivas*, 513 F.3d 753, 758-59 (7th Cir. 2008) (citing *United States v. Dowthard*, 500 F.3d 567, 569 (7th Cir. 2007)).

Here, Plaintiffs' Fourth Amendment claim fails because the officers had probable cause to believe that Plaintiffs were violating the Ordinance: the officers observed Plaintiffs driving while using a mobile phone without a hands-free device. *See United States v. Figueroa-Espana*, 511 F.3d 696, 701 (7th Cir. 2007) (finding that plaintiff could not challenge the constitutionality of a traffic stop where the officer observed that the vehicle was in violation of the traffic code). Indeed, Plaintiffs themselves concede that they were engaged in the prohibited activity—driving with a wireless telephone without the use of a "hands-free" device—when they were stopped. (R. 15, Am. Compl ¶¶ 44, 50, 56.) Reliance on a presumptively valid ordinance, even if it is later ruled unconstitutional, provides probable cause for an arrest. *Doe v. Heck*, 327 F.3d 492, 516 (7th Cir. 2003).

Furthermore, even if Plaintiffs could state a Fourth Amendment claim against the officers, the officers would be entitled to qualified immunity. The Supreme Court has set forth a two-part test for determining whether a defendant is entitled to qualified immunity: "(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; [and] (2) whether that constitutional right was clearly established at the time of the alleged violation." *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court has already concluded that the Defendant officers did not violate Plaintiffs' constitutional rights because the officers had probable cause to detain Plaintiffs for violating the Ordinance. Moreover, even if Plaintiffs could satisfy the first part of the test, the officers would be entitled to qualified immunity because the Ordinance has not been previously challenged, and there is nothing so "flagrantly unconstitutional" about the traffic Ordinance that would have alerted the Defendant officers to the possibility that the Ordinance is unenforceable. *Heck*, 327 F.3d at 516 ("[t]he enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws."). Accordingly, a reasonable officer would not have understood his actions to be unconstitutional under the Fourth Amendment, and thus the Defendant officers are entitled to qualified immunity. *Id.*

Therefore, Defendants' motion to dismiss Count I for failure to state a claim is granted.

### B. False Arrest under Illinois Law

In order to establish false arrest under Illinois law, a plaintiff must prove that: (1) he was restrained or arrested by the defendants; and (2) the defendants acted without reasonable grounds

to believe that the plaintiff committed an offense. *Meerbrey v. Marshall Field & Co., Inc.*, 564 N.E.2d 1222, 1231 (Ill. 1990); *Johnson v. Target Stores, Inc.*, 791 N.E.2d 1206, 1219-20 (Ill. App. Ct. 2003). Under Illinois law—as under federal law—a plaintiff cannot state a claim for false arrest stemming from a traffic stop where the officer had probable cause to believe that the driver of the vehicle had committed a traffic violation. *People v. Matous*, 886 N.E.2d 1278, 1283 (Ill. 2008). As explained above, Plaintiffs concede that they were engaged in activity prohibited by the Ordinance when they were stopped. Therefore, for the reasons explained above, the officers had probable cause to make the traffic stops, and Plaintiffs fail to state a claim for false arrest under Illinois law.

Furthermore, the Court agrees with the Defendant officers that they are immune from suit pursuant to the Illinois Local Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS § 10/1-101 *et seq*. "If a public employee acts in good faith, without malice, and under the apparent authority of an enactment that is unconstitutional, invalid or inapplicable, he is not liable for any injury caused thereby except for the extent that he would have been liable had the enactment been constitutional, valid and applicable." 745 ILCS § 10/2-203. The Tort Immunity Act shields the Defendant officers from liability for the state law false arrest claim for the same reasons that they are entitled to qualified immunity from the federal false arrest claim.

Thus, Defendants' motion to dismiss the state law false arrest claim is granted.

## II.  Malicious Prosecution

In Count III, Plaintiffs allege that Schor and other similarly situated Plaintiffs were maliciously prosecuted under Illinois law. (R. 15, Am. Compl. ¶¶ 71, 73, 74.) A plaintiff who files a malicious prosecution claim under Illinois law must show that: (1) the defendant

6

instituted the underlying suit without probable cause and with malice; (2) the former action was terminated in the plaintiff's favor; and (3) the plaintiff suffered a special injury beyond the usual expense, time, or annoyance in defending the underlying action. *Howard v. Firmand*, 880 N.E.2d 1139 (Ill. App. Ct. 2007) (citing *Miller v. Rosenberg*, 749 N.E.2d 946 (Ill. 2001)). Probable cause is a complete defense to an action for malicious prosecution. *Id.* As explained above, the Defendant officers had probable cause to detain Plaintiffs because the Plaintiffs were committing a traffic violation. *Matous*, 886 N.E.2d at 1283. Thus, Plaintiffs cannot maintain an action for malicious prosecution against Defendants.[1]

Accordingly, Defendants' motion to dismiss Count III is granted.

## III. Liability Against Mayor Daley and the City of Chicago

In Counts IV and V, Plaintiffs seek to hold Mayor Daley and the City liable under 42 U.S.C. § 1983 for causing and participating in the deprivation of Plaintiffs' constitutional rights. (R. 15, Am. Compl. ¶ 79.)

### A. Individual Liability

While the Complaint alleges that the Mayor implemented policies and practices that violate the Constitution, Plaintiffs argue that they are suing Mayor Daley in his individual capacity only. (R. 28, Resp. to Defs.' Mot. to Dismiss at 6.) Municipal legislators are entitled to absolute immunity from suit under 42 U.S.C. § 1983 for their legislative activities. *Bogan v.*

---

[1] Moreover, Schor's claim is barred by the applicable statute of limitations. (R. 18, Mem. in Supp. of Mot. to Dismiss at 7.) Under the Tort Immunity Act, the applicable statute of limitations for a state law malicious prosecution claim against a local entity or its employees is one year. 745 ILCS § 10/8-101. Schor contends that she was stopped and detained by an unknown Chicago police officer on March 4, 2006. (R. 15, Am. Compl. ¶¶ 44-45.) As Plaintiffs did not file their original complaint until December 19, 2007, Schor failed to bring her claim within the one-year statute of limitations.

7

*Scott-Harris*, 523 U.S. 44, 49 (1998). Legislative activities include introducing, voting for, and signing legislation. *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808-09 (7th Cir. 2003).

Here, Plaintiffs seek to hold Mayor Daley liable for authorizing, approving, and supporting the Ordinance's passage through the City Council and enforcement by Chicago police officers. (R. 28, Resp. to Defs.' Mot. to Dismiss at 7.) Under *Nisenbaum*, these are purely legislative functions for which Mayor Daley is entitled to absolute immunity. Accordingly, Plaintiffs' claims against Mayor Daley in his individual capacity fail.[2]

### B.   *Monell* Liability

In Count V, Plaintiffs allege that it is the custom, practice, and/or policy of the City to: "permit officers to falsely arrest and cite citizens for using a mobile telephone while operating a motor vehicle without a 'hands-free' device, in the absence of proper notice to the citizens;" and fail to "discipline," "properly investigate," "take proper remedial action" or "provide proper training" for these officers. (R. 15, Am. Compl. ¶¶ 36, 84, 86.) A municipality can be found liable under Section 1983 if the municipality itself, through a municipal policy or custom, deprives someone of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

A municipality may not be held liable for a constitutional injury, however, unless there is a finding that the individual officer is liable on the underlying substantive claim. *Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000). In other words, if an officer has not violated an

---

[2] Moreover, to the extent Plaintiffs attempt to allege that Mayor Daley personally supervised or directed officers to enforce the Ordinance, beyond his purely legislative functions, Mayor Daley would be entitled to qualified immunity on the same grounds as the individual police officers.

8

individual's constitutional rights, "it is inconceivable that [the city] could be liable." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). As this Court has concluded that Plaintiffs fail to state a claim against the individual Defendants, neither the City nor Mayor Daley in his official capacity may be held liable for having a policy or practice of enforcing or turning a blind eye toward enforcement of the Ordinance. Thus, Plaintiffs' *Monell* claims fail.

## IV. Supervisory Liability

In Counts VI and VII, Plaintiffs seek to hold the City liable under the common law theory of *respondeat superior*, and as codified in 745 ILCS § 10/9-102. In these Counts, Plaintiffs allege that the City is liable for the substantive violations committed by the Defendant officers and Mayor Daley. (R. 15, Am. Comp. ¶¶ 90, 92.) As set forth above, however, Plaintiffs have failed to state a claim against the individual Defendants or Mayor Daley. Consequently, Plaintiffs cannot state a claim for supervisory liability, or *respondeat superior*, and Counts VI and VII of the Complaint are dismissed. *See* 745 ILCS § 10/2-109 ("[a] local public entity is not liable for any injury resulting from an act or omission of its employee where the employee is not liable").

## V. Equal Protection "Class of One" Claim

The Complaint does not include Count VIII, but rather skips to Count IX, Plaintiffs' so-called "§ 1983 equal protection 'class-of-one' claim." This claim is oxymoronic because Plaintiffs are attempting to bring their lawsuit on behalf of a class of similarly situated individuals. Presumably, Plaintiffs raise a "class of one" claim because they cannot show that they are a member of a protected class, as required for a traditional equal protection claim. *See, e.g., Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (to state an equal protection claim, the

9

plaintiff must allege that he is a member of a protected class).

Alas, Plaintiffs' "class of one claim" fails. To state an equal protection "class of one" claim, a plaintiff must allege: (1) "that he has been intentionally treated differently from others similarly situated; and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a totally illegitimate animus toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (internal citations and quotations omitted). Plaintiffs allege that they were treated differently from individuals who did not violate the Ordinance because they were ticketed, while non-violators were not ticketed. (R. 15, Am. Compl. ¶¶ 98-100.) Plaintiffs contend that the non-violators were similarly situated to Plaintiffs because neither group violated any "effective" Ordinance. (*Id.*) The violation of the Ordinance, however, is exactly what makes these groups differently situated. Moreover, the Ordinance clearly provided the officers with a "rational basis" for treating Plaintiffs differently, as it gave the officers probable cause to ticket Plaintiffs. Thus, Plaintiffs' "class of one" equal protection claim fails as a matter of law, and Defendants' motion to dismiss this Count is granted.

## VI. Request for Injunctive and Declaratory Relief

The final Count in Plaintiffs' Complaint is Count XI, as the Complaint skips Count X. In Count XI, Plaintiffs request an injunction declaring the practice of the City of arresting, detaining, ticketing, and prosecuting motor vehicle operators using a mobile telephone without a "hands free" device an unconstitutional violation of the Fourth Amendment; enjoining the City from issuing citations for violations of the Ordinance until signs providing notice of the Ordinance are posted; ordering the City to post signs providing notice of the Ordinance; ordering

the City to immediately withdraw all charges against any individual cited for violating the Ordinance; ordering the City to return all money collected from individuals cited under the Ordinance; and declaring that the Ordinance was not, is not, and will not be effective until proper signs are posted. (R. 15, Am. Compl. ¶ 113.) Plaintiffs argue that the Illinois Vehicle Code, 625 ILCS § 5/11-207, requires the City to post signs notifying motor vehicle operators of the Ordinance, and that the Ordinance is not enforceable in the absence of these signs. (R. 15, Am. Compl. ¶¶ 15-22.)

As the Court has already determined that Plaintiffs have not stated a claim for a Fourth Amendment violation in their Complaint, all that remains of their request for declaratory and injunctive relief is the interpretation of the relevant state and municipal laws; *i.e.*, the application of the Illinois Vehicle Code to the Chicago Ordinance. A district court may decline to exercise supplemental jurisdiction in any civil action over which it has original jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). When a state law claim is appended to a federal claim that confers original jurisdiction on the federal courts, "the sensible presumption [is] that if the federal claims drop out before trial, the district court should relinquish jurisdiction over the state law claims." *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007). Here, at the motion to dismiss stage with little discovery having occurred, the presumption in favor of relinquishing federal jurisdiction applies. Moreover, the remaining claim potentially raises new and complex issues of state and municipal law, which provides another ground for declining to exercise supplemental jurisdiction in this case. 28 U.S.C. § 1367(c)(1). Therefore, the Court declines to exercise supplemental jurisdiction over the remaining state law claim, and accordingly, dismisses this claim without

11

prejudice.

## MOTION TO AMEND COMPLAINT

On June 6, 2008, months after the filing of Plaintiffs' initial and amended complaints, and weeks after the motion to dismiss was fully briefed, Plaintiffs filed a motion for leave to file a second amended complaint to add two new claims—that the Ordinance violates due process based on Plaintiffs' fundamental right to travel and that the Ordinance is void for vagueness—and to add a new Plaintiff, Joseph Fosco.[3] (R. 37, Mot. to Amend at 2.) On June 18, 2008, this Court denied Plaintiffs' motion in open court because Plaintiffs were dilatory in bringing the motion to amend and because amendment of the Complaint would be futile. (R. 40, 6/18/08 Min. Order.)

Under Federal Rule of Civil Procedure 15(a), after the first amendment, a party may amend their pleading only by leave of court, or with the opposing party's consent; the Rule provides that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "[A] request to allow the complaint to be amended is addressed to the judge's discretion." *Springman v. AIG Mktg., Inc.*, 523 F.3d 685, 690 (7th Cir. 2008). "Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002).

---

[3] The motion to amend also seeks leave to correct typographical errors, specifically to properly renumber the Complaint sequentially to account for missing Counts. (R. 37, Mot. to Amend at 2.) Such amendment is unnecessary, however, as the Court has addressed each Count despite their inappropriate numbering.

This Court determined that Plaintiffs unduly delayed filing their motion to amend because the current motion to dismiss had been fully briefed for almost two months, and Plaintiffs already amended their complaint almost five months ago. Plaintiffs offer no excuse for the delay in bringing their motion. Indeed, it appears that Plaintiffs' reason for failing to seek leave to amend their complaint earlier in this litigation is that they "mistakenly or inadvertently failed to address everything in the original complaint, and failed to act with diligence." *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (internal citations and quotations omitted). This does not satisfy the Rule 15 "when justice so requires" standard. *Id.*

In addition, Plaintiffs' proposed amendment to the Complaint would be futile. Amending a complaint would be futile if the amended claim would not survive a motion for summary judgment, or if the proposed amended complaint fails to satisfy the requirements of the Federal Rules. *See U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 740 (7th Cir. 2007); *Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007). Here, amendment would be futile because Plaintiffs would be unable to succeed on either their proposed due process or vagueness claims.

First, Plaintiffs' proposed claim for violation of their "substantive due process right to travel" cannot succeed. (R. 37, Mot. to Amend at 8.) As an initial matter, the Due Process Clause does not protect any "fundamental right to travel." *See Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 732-33 (7th Cir. 2006) (listing fundamental substantive due process rights). To find that a government action violates the requirements of substantive due process when no fundamental right is at stake, "it must be utterly lacking in rational justification. *Brown v. City of Michigan City, Indiana*, 462 F.3d 720, 733 (7th Cir. 2006). Plaintiffs do not allege an

13

utter lack of rational justification for the statute; indeed, this claim would fail because the justification for the Ordinance is clearly rational: the safety of people on the City's streets. Thus, this proposed amendment would be futile.

Second, Plaintiffs' proposed claim that the Ordinance is void for vagueness would fail as well. Plaintiffs argue that the Ordinance does not give a person of ordinary intelligence fair notice of what conduct it forbids because it fails to sufficiently define the terms "hands-free" and "use" of a mobile phone. (R. 37, Mot. to Amend at 8-10.) "A party raising a facial challenge to a statute or regulation on vagueness grounds must demonstrate that the law is impermissibly vague in all of its applications." *Koutnik v. Brown*, 456 F.3d 777, 783 (7th Cir. 2006) (internal citations and quotations omitted). The regulation "can be found to be impermissibly vague if it fails to define the offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and it fails to establish standards to permit enforcement in a nonarbitrary, nondiscriminatory manner." *Fuller ex rel. Fuller v. Decatur Public Sch. Bd. of Educ. Sch. Dist. 61*, 251 F.3d 662, 666 (7th Cir. 2001). Plaintiffs' facial challenge to the Ordinance cannot meet this standard. In order to prevail, Plaintiffs "need to show that the rule is unconstitutional in all its applications, which would include its application to them. . . . A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Id.* at 667. As discussed above, Plaintiffs do not show that the Ordinance was enforced against them in an arbitrary or discriminatory way, nor do they propose to amend the complaint to include allegations that it was enforced against them in an arbitrary or discriminatory way. (*See* R. 37, Mot. to Amend at 10-12.) Plaintiffs' list of hypothetical definitions of "use" and "hands-free" does not move their claim out of the realm of futility. (R.

37, Mot. to Amend at 9-10.) Thus, for these reasons, Plaintiffs' motion for leave to amend is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted (R. 17), and Plaintiffs' motion to amend their complaint (R. 37) is denied. All of Plaintiffs' claims are dismissed with prejudice, except for Plaintiffs' claim for injunctive and declaratory relief, which is dismissed without prejudice to its refiling in state court.

Date: June 30, 2008     ENTERED:  _____
                                   Ruben Castillo
                                   United States District Judge